UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

WILLIE ROSE,

                Plaintiff,                Case No. 2:16-cv-242

v.                                      Honorable Gordon J. Quist

HEIDI WASHINGTON, et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Sherry, McKee, Rapelje, Woods, Borgerding, Kernstein, Snider, Olsen, Baker, Simmons, Vining, Witty, Bowers, Corizon Health, LaPlaunt, Ball, Jenkins, Ander Jack, Anderson, Mastaw, McLaren, Parkinson, McPherson, Lamb, Groves, Sheldon, Curley, Haapala, Unknown Parties ##1-11 and ##13-16, Recla, Cryderman, Bury, Mackenzie, Goodell, MacMasters, Vollick, Kemp, and Unknown Parties named in supplemental complaints

(ECF Nos. 32 and 34). However, Plaintiff's Eighth Amendment claims against Defendants Damron, Covert, Bonefeld, Rogers, McDowell, Kinny, Paquette, and Canlas, his retaliation claims against Defendants Fretag, Covert, Rogers, and McDowell, and his Fourth Amendment claims against Defendants Rogers, McDowell, and Unknown Party #12 will not be dismissed on initial review.

## Discussion

I.    Factual allegations

Plaintiff, Willie Rose, a prisoner currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against forty-nine individuals. In Plaintiff's amended complaint (ECF No. 26), he names Defendants MDOC Director Heidi Washington, Deputy Director Jeri-Ann Sherry, Deputy Director Unknown McKee, Regional Prison Administrator Lloyd Rapelje, Warden Jeffrey Woods, Assistant Chief Medical Officer William Borgerding, Chief Medical Officer Unknown Kernstein, Joseph Damron, RN, Corrections Officer Unknown Snider, Corrections Officer Unknown Olsen, Corrections Officer Unknown Baker, Corrections Officer Unknown Simmons, Corrections Officer Unknown Vining, Elizabeth Kinny, RN, Physician's Assistant Danielle Paquette, Chief Executive Officer Corizon Health Karey Witty, Chief Operating Officer Corizon Health Scott Bowers, Corizon Health, Dr. Bienvenido Canlas, Assistant Resident Unit Supervisor Rebecca Fretag, Gerald Covert, RN, Health Unit Manager Melissa LaPlaunt, Dr. Unknown Bonefeld, Wendy Ball, RN, Health Unit Manager C. Jenkins, Assistant Grievance Coordinator Unknown Ander Jack, Grievance Coordinator Unknown Anderson, Administrative Assistant Unknown Mastaw, Warden Unknown McLaren, Health Care Worker P. Parkinson, Prisoner Accounting Unknown McPherson, P. Lamb, RN, Policy Section Manager Cheryl Groves, Administrator at Bureau of Health Care Joanne Sheldon, Assistant Deputy Director M. Curley, and Heather Haapala.

Plaintiff also names the following unknown parties as Defendants in this action: Unknown Party #1 Regional Health Administrator, Unknown Party #2 Corrections Officer, Unknown Party #3 Health Care Worker, Unknown Party #4 Health Care Worker, Unknown Party #5 Health Care Worker, Unknown Party #6 Health Care Worker, Unknown Party #7 Health Care Worker, Unknown Party #8 Corrections Officer, Unknown Party #9 Shift Commander, Unknown Party #10 MDOC Official, Unknown Party #11 Corizon Health Official, Unknown Party #12 Corrections Officer, Unknown Party #13 Corrections Officer, Unknown Party #14 Training Division Coordinator, Unknown Party #15 Health Information Compliance Coordinator, and Unknown Party #16 Records Administrator.

Plaintiff's complaint with attached exhibits is 299 pages long. Plaintiff claims that all of the named Defendants were deliberately indifferent to Plaintiff's serious medical need on November 22, 2015, which caused Plaintiff to suffer unnecessary pain and injury, and could have resulted in Plaintiff's death. Plaintiff claims that in the early morning on November 20, 2015, he informed Defendant Unknown Party #2 that he was suffering from symptoms of cholecystitis. Defendant Unknown Party #2 called health services twice, but did not get a response. Due to lack of proper training, Defendant Unknown Party #2 told Plaintiff that there was no answer, so he would have to wait until Monday to be treated.

In the early morning of November 22, 2015, Defendant Snider called health care and arranged for Plaintiff to be seen by Defendant Damron, who gave Plaintiff over the counter medication, but refused to provide any other care. Defendant Damron told Plaintiff that he believed Plaintiff had a virus and would be alright. At 9:00 a.m., Plaintiff told Defendant Snider that Defendant Damron had refused to give him treatment. Defendant Snider responded that there was no one else in health care and did nothing while Plaintiff suffered from severe pain, dizziness, vomiting, and chills. At 2:15 p.m. on the same date, Defendants Olsen and Baker called health care

for Plaintiff, but were denied access by Defendant Damron. Defendant Damron asked them to put Plaintiff on the phone and told him that he was not going to be given treatment. Plaintiff stated that his condition had worsened and pleaded to be treated. Defendant Damron told Plaintiff that he was going home soon, but he would leave a note for the nurse to follow up with Plaintiff. When Plaintiff relayed this information to Defendants Olsen and Baker, they told him that they were sorry, but there was nothing more that they could do. Plaintiff states that the nurse, who was Unknown Party #5, never followed up with Plaintiff.

Plaintiff attempted to take Tums and Tylenol, but became overwhelmed with extreme pain and dizziness and lost consciousness. When Plaintiff became conscious again, his roommate was asking him if he was ok. The roommate then went to get help. Plaintiff fell back into unconsciousness and when he became conscious again, Defendant Simmons was asking him questions. Plaintiff told Defendant Simmons that he was suffering from extreme back and stomach pain and pleaded for help. Defendant Simmons called health services for assistance, but Unknown Party #6 refused to respond because no health professionals were in the station. Defendant Simmons called again at 10:40 p.m., but there was still no health professional in the station. Defendant Unknown Party #7 then directed Defendant Simmons to bring Plaintiff to health services. Defendants Simmons and Vining complied, but dropped Plaintiff three times during the process. Once Plaintiff arrived at health services, he was required to wait for the arrival of Defendant Kinny who was in another facility. When Defendant Kinny arrived, Plaintiff explained his symptoms. Defendant Kinny asked how Plaintiff had gotten into the wheelchair, and Defendants Vining and Unknown Party #8 stated that they had put Plaintiff in the chair. Defendants Kinny, Vining, and Unknown Party #8 then went into an adjacent room and began to argue. Defendant Kinny then asked Plaintiff if his back hurt, and Plaintiff stated that it did. After examining Plaintiff, Defendant Kinny called Defendant Paquette, who ordered that Plaintiff be taken to the hospital. Defendants

Kinny, Vining, and Unknown Party #8 then began accusing Plaintiff of faking an illness and being drunk. Plaintiff was told that the state was going to charge him a big medical bill for the incident. Defendant Kinny then stated that she had to go and directed officers to prepare Plaintiff for transport. Defendant Kinny left Plaintiff with no medical professionals in attendance. Defendants Vining and Unknown Party #8 then pushed Plaintiff into the waiting room and left him there.

Defendant Paquette decided that corrections officials would transport Plaintiff to the hospital. Defendants Paquette, Kinny, and Unknown Parties #9 and #10 allowed Plaintiff to be taken to the hospital in a small squad car without any accompanying medical personnel. At 11:30 p.m., Defendant Unknown Party #12 performed a body search on Plaintiff by jerking his pants off while Plaintiff was in the wheelchair, causing Plaintiff extreme back pain. Defendant Unknown Party #12 then pushed Plaintiff outside to a small squad car, where Defendant Unknown Party #13 grabbed Plaintiff and put him in the back seat to be transported to the hospital without the assistance of any health care professional.

Plaintiff was taken to War Memorial Hospital, where he was diagnosed as having acute cholecystitis and was scheduled for immediate surgery. On November 23, 2015, the doctor advised Plaintiff of the gravity of his condition, which involved perforation of the gallbladder with fluid leakage and severe infection, and told Plaintiff that he wanted to operate as soon as Plaintiff's white blood cell count came down. Plaintiff had surgery on November 24, 2015. After the surgery, the doctor told Plaintiff that his gallbladder had been gangrenous and that the infection had spread to Plaintiff's liver, so the doctor had to remove part of Plaintiff's liver, as well as Plaintiff's gallbladder. The doctor explained that the liver involvement would have contributed to Plaintiff's severe pain and excessive bleeding. Because of the severity of Plaintiff's condition, he required intravenous antibiotics and an extended hospital stay. Plaintiff was sent to the Chippewa

Correctional Facility (URF) on November 26, 2015, where he received follow-up care by URF nursing staff and was scheduled to see Defendant Canlas.

On November 30, 2015, Defendant Canlas saw Plaintiff for his post-op visit, but refused to address Plaintiff's severe back pain. Defendant Canlas stated that there had been no reports of breaks or fractures in Plaintiff's back and that Plaintiff should lose some weight. Defendant Canlas told Plaintiff that if he wanted to be seen for his back, he should kite. Plaintiff protested that he was in severe pain and that waiting for an appointment would be cruel. Plaintiff also complained that he could not afford the co-pay for the appointment. Defendant Canlas advised Plaintiff that he would not be charged a co-pay because the visit would be a follow-up to the November 22, 2015, medical emergency. Defendant Canlas then cancelled the visit. Plaintiff submitted a kite and was eventually charged a co-pay in violation of policy.

On December 17, 2015, Defendant Canlas saw Plaintiff for his back pain and refused to do anything but give him OTC Tylenol and tell him to lose weight. When Plaintiff complained about the co-pay, Defendant Canlas told him that he should not have been charged. During the appointment, Plaintiff asked about his medical records from November 22, 2015. Defendant Canlas told Plaintiff that the records were about six pages long and that they showed that Plaintiff had told Defendant Damron that he was suffering from serious gallbladder pain. Plaintiff went to the records office to ask for a copy of the November 22, 2015, medical records. However, when the records were provided, they were incomplete and consisted of only two pages. Plaintiff attempted to order the records again on April 29, 2016, but he was only given a cover sheet with no substantive information.

On December 1, 2015, Plaintiff asked Defendant Fretag for the names of all individuals who were involved with Plaintiff's treatment on November 22, 2015, but Defendant Fretag became verbally abusive and refused to give Plaintiff any information. On December 2,

2015, Plaintiff filed a grievance regarding the treatment he received from prison officials on November 22, 2015, as well as a grievance on Defendant Fretag for her failure to provide him with the names of parties involved in his treatment on November 22, 2015. However, the grievance was not filed by Defendant McLean until December 15, 2015, after Plaintiff's family called the prison to ask why Plaintiff's grievance had not been processed. During the interim period, Plaintiff was seen by health care on December 2, 7, and 9. At each appointment, Plaintiff was scheduled for a new follow-up appointment with a nurse.

Plaintiff wrote to Defendants Woods and LaPlaunt, advising them that he had been suffering from serious back pain and was being denied treatment. Plaintiff did not receive a response from either Defendant Woods or Defendant LaPlaunt. On December 15, 2015, Plaintiff was seen by Social Worker Dreary for stress and depression. Mr. Dreary counseled Plaintiff and told him that he was scheduled to be called out to see health services twice the next day. On December 16, 2015, Plaintiff was seen by Defendant Covert, who told Plaintiff that he was causing problems for good people. Plaintiff said he was not there to talk about the grievance, but only to be treated. Plaintiff also told Defendant Covert that according to Defendant Canlas, he should not be charged a co-pay. Defendant Covert told Plaintiff that there was nothing wrong with him, and that he was going to be charged a co-pay every time he visited health services. Plaintiff told Defendant Covert that Defendant Damron had set up the appointment so that Plaintiff could be seen by the doctor if he had not already been seen, and could get an extension on the hot water bottle if necessary. In response, Defendant Covert took Plaintiff's hot water bottle. Defendant Covert also falsified Plaintiff's records by stating that his back injury was caused by a fall from his bunk and not related to the way he was treated for gallbladder problems on November 22, 2015. Defendant Covert then ripped up some papers from Plaintiff's medical chart and made him fill out a new kite. Plaintiff claims that Defendant Covert's treatment of Plaintiff was motivated by a desire to retaliate

against him for writing the December 2, 2015, grievance and insinuated that Plaintiff was too comfortable at URF.

Shortly thereafter, Defendant Fretag stated that Defendants Covert and Damron had told her that Plaintiff was trying to get them in trouble, that it was not going to work because Plaintiff was a prisoner, and that Defendant Damron wanted Plaintiff to turn in his hot water bottle. Less than a week later, Plaintiff was transferred at the behest of Defendant Fretag, which caused the loss of Plaintiff's property and made it difficult for him to meet a court deadline. Plaintiff claims that this transfer was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct.

Plaintiff alleges that Defendants Corizon Health, Borgerding, Witty, Bowers, Paquette, and Unknown Parties #1, #9, #10, and #11 failed to properly train medical employees or to ensure adequate staffing of medical personnel, which violated Plaintiff's Eighth Amendment rights. Plaintiff also claims that Defendants Washington, Sherry, McKee, Unknown Party #14, Rapelje, Woods, Witty, Bowers, Corizon Health, Sheldon, Kernstein, Curley, and Unknown Party #1 failed to supervise and/or train corrections employees, which resulted in a violation of Plaintiff's rights. Plaintiff states that since the time of his illness, the staffing problem has been corrected and third shift health care personnel have been added to all prisons.

Plaintiff claims that Defendants Parkinson, Haapala[1], Damron, and Covert altered Plaintiff's medical records in an effort to prevent Plaintiff from supporting his legal claims. Plaintiff states that he made Defendant Woods aware of Plaintiff's request for records via a letter. Plaintiff states that Defendants Haapala, McPherson, Ball, Jenkins, Unknown Party #15 Health Information Compliance Coordinator, Rogers, Damron, Covert, Anderson, Ander Jack, and Bonefeld conspired

---

[1]Also referred to as Happolka in the body of Plaintiff's complaint.

to commit fraud when they altered Plaintiff's medical records and/or interfered with his grievance remedies. Plaintiff also claims that Defendant Lamb lied about being given an extension to answer the grievance.

On January 21, 2016, Defendant Bonefeld denied Plaintiff's request to treat him for back pain, stating that he was only going to see Plaintiff for his gallbladder problem, and that since Plaintiff was not having gallbladder issues, he should leave health care. Defendant Bonefeld falsely charted that Plaintiff had injured his back "while bending over." Plaintiff asserts that he was actually injured when he was transported to the hospital in a small squad car.

On May 23, 2016, and June 8, 2016, Plaintiff wrote grievances on Defendant Parkinson for alteration and/or destruction of medical records. Defendant Parkinson retaliated by denying Plaintiff's requests for records. Plaintiff specifically states that he has been seeking copies of medical kites requesting emergency treatment between November 19, 2015, and November 22, 2015, as well as kites submitted between November 26, 2015, and December 21, 2015, which complained of back pain, psychological trauma, nausea, and fever. Defendant Parkinson refused to provide Plaintiff with these documents and told him that there were not any "CHJ-549" kites in his record between November 19, 2015, and December 22, 2015. Plaintiff claims that between July 26, 2016, and August 3, 2016, Defendant Parkinson told him that she could not give him records because she feared losing her job. She then gave Plaintiff some altered records from Defendants Damron, Kinny, and Covert, and told Plaintiff not to ask for records again because these were the only records she had.

The Court notes that Plaintiff has filed two motions to supplement his complaint (ECF Nos. 32 and 34), in which he seeks to add new Defendants and claims. The Court will grant Plaintiff's motions and add Defendants Corrections Officers Recla, Cryderman, McDowell, Bury, Mackenzie, Goodell, MacMasters, and Vollick, as well as Defendants Regional Medical Officer

Keith Papendik, Nurse Practitioner Penny Rogers, Law Librarian Gina Kemp, and Unknown Parties prison officials.

In Plaintiff's proposed supplemental pleadings, Plaintiff alleges that while he was confined at URF and at the Kinross Correctional Facility (KCF), he filed numerous grievances, which he pursued through step III. The grievances demonstrated that Defendants Papendik, Borgerding, LaPlaunt, and others were aware of the misconduct of prison and health care employees. In addition, Defendants Papendik and Borgerding began to retaliate against Plaintiff by directing Corizon Health and health care officials to provide less effective care to Plaintiff. Specifically, Plaintiff points to care he received from Defendant Canlas on October 30, 2015, and December 17, 2015, Defendant Covert on December 16, 2015, and Defendant Bonefeld on January 21, 2016. Plaintiff claims that health care officials refused to approve Dr. Stallman's request for blood work and antibiotics when Plaintiff was suffering painful, swollen lymph nodes. Plaintiff claims that Defendant Borgerding and Nurse Practitioner Weist, who is not named as a defendant, switched his prescription from Prednisone to Methyl-Prednisone. When Plaintiff complained, Defendant Rogers stated that it had been changed by Defendant Bonefeld's boss, but that she would reinstate Plaintiff's prescription. Plaintiff attempted to pay for a copy of his medical records with regard to that change, but his request was refused by Defendant Parkinson.

On May 24, 2016, Plaintiff was scheduled for an unnecessary appointment with Defendant Rogers by an Unknown Party. When Plaintiff arrived, Defendant Rogers asked why Plaintiff was there and Plaintiff responded that he did not know. Defendant Rogers then said that Plaintiff's EMG[2] was finally approved and that it would be soon. Defendant Rogers asked Plaintiff if he was feeling any serious pain, and Plaintiff said that he was not, thanks to the Prednisone.

---

[2]Electromyogram.

Defendant Rogers said "good" and cancelled the visit. However, as Plaintiff was leaving, Defendant Rogers checked her computer and told Plaintiff to wait. Plaintiff believes that she had just received an email from other Defendants. Defendant Rogers told Plaintiff that she needed to examine him to set him up for his MRI. Plaintiff stated that he thought he was to have an EMG. Defendant Rogers told Plaintiff to "never mind that" and told Plaintiff to sit down. Defendant Rogers then unfolded a paper clip and poked Plaintiff in the toes, feet, and legs, and stated that Plaintiff had not felt the pokes. Plaintiff said, "I did," but Defendant Rogers smiled and said, "No, you didn't." Defendant Rogers asked Plaintiff if he had any incontinence and, when Plaintiff said that he did not, she stated, "Yes, you do." Defendant Rogers also noted that Plaintiff was having a lot of lower back pain, despite Plaintiff stating that his pain was minor. Defendant Rogers then had Plaintiff do some stretches and told him that she needed to do a rectal exam on Plaintiff. Plaintiff refused, and asked Defendant Rogers why she was doing this. Defendant Rogers stated, "You're writing all of these complaints and trying to hold us accountable for your back pain so I need to perform this rectum exam on you." Plaintiff continued to refuse the exam, so Defendant Rogers called in Defendant McDowell, who would not leave the room and told Plaintiff that he had to comply with the exam or he would be sent to segregation until he complied. Defendant McDowell also told Plaintiff that everyone was sick of Plaintiff's "crap" and he could write as many grievances as he wanted. Plaintiff finally complied, and Defendant Rogers assaulted Plaintiff by "sticking her fingers in his rectum." During the exam, Defendants Rogers and McDowell laughed at Plaintiff's situation.

Defendant McDowell subsequently told officers and inmates that Plaintiff was a homosexual who liked to get "finger banged by old ladies." Defendant McDowell also began calling Plaintiff a "rat." Plaintiff asked for permission to file a grievance regarding this conduct, but his request was denied by Defendant Anderson. Plaintiff's family mailed copies of Plaintiff's handwritten grievances to the Ombudsman. In response, Defendant Jenkins interfered with

Plaintiff's treatment plan and instructed Defendant Eicher to "back date" an accommodation for heat related illness, as well as to cover up the denial of blood work and the denial of a shoe lift to treat Plaintiff's back pain.

Plaintiff claims that Defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff fails to set forth any specific factual allegations of wrongdoing regarding Defendants Washington, Sherry, McKee, Rapelje, Woods, Mastaw, McLaren, Groves, Curley, Kernstein, Witty, Bowers, LaPlaunt, Sheldon, Recla, Cryderman, Bury, Mackenzie, Goodell, MacMasters, Vollick, Kemp, Unknown Parties #1, #3, #4, #5, #11, #14, and #16, and Unknown Parties named in supplemental pleadings. Some of the above individuals are not even mentioned in the body of Plaintiff's complaint. To the extent that Plaintiff makes any claim against these individuals, he seems to imply that they are legally responsible for their subordinates' misconduct because of a failure to provide proper supervision and training.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In addition, to the extent that Plaintiff claims a failure-to-train subordinates, such a claim is properly directed against the Defendant Corizon and not against individual Defendants. *See Barnett v. Luttrell*, 414 F. App'x 784, 789-90 (6th Cir. 2011) (citing *Phillips v. Roane Cnty.,* 534 F.3d 531, 543-44 (6th Cir. 2008)). Plaintiff has failed to allege that Defendants Washington, Sherry, McKee, Rapelje, Woods, Mastaw, McLaren, Groves, Curley, Kernstein, Witty, Bowers, LaPlaunt, Sheldon, Recla, Cryderman, Bury, Mackenzie, Goodell, MacMasters, Vollick, Kemp, Unknown Parties #1, #3, #4, #5, #11, #14, and #16, and Unknown Parties named in supplemental pleadings engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff asserts that Defendant Corizon Health failed to properly train medical employees, which violated Plaintiff's Eighth Amendment rights. The failure to train employees may violate the Eighth Amendment "where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). In addition, the deficiency in training must have actually caused the indifference to Plaintiff's medical needs. *Id.* In addressing a failure to train claim against Corizon Health, the United States District Court for the Eastern District of Pennsylvania stated:

> The Supreme Court has recognized a cause of action for failure to train or discipline employees under § 1983 where liability attaches only after a showing that the failure to train or discipline amounted to a "deliberate indifference to the rights of [others]." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). This "deliberate indifference" standard is an objective standard different than the subjective deliberate indifference standard that is applied under the Eighth Amendment. See *Farmer v. Brennan*, 511 U.S. 825, 840–847 (1994). *Canton* teaches that the failure to train an employee must be a choice on the part of the supervisor or supervising entity knowing that the training that is (or is not) being provided is not sufficient for

the employees and the choices they encounter on the job. 489 U.S. at 388–90.

> To maintain a claim for failure to properly train or discipline, a plaintiff must show that "a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates." *Garcia v. Cnty. of Bucks, Pa.*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citations omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for ... failure to train." *Simpson v. Ferry*, —— F. Supp. 3d ——, 2016 WL 4247546, at *7 (E.D. Pa. Aug. 10, 2016) (internal quotation marks and further quotations omitted). "A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." *Garcia*, 155 F. Supp. 2d at 268.

*Robinson v. Corizon Health, Inc.*, 2016 WL 7235314, at *10 (E.D. Pa. Dec. 13, 2016).

In this case, as in *Robinson*, Plaintiff has not alleged any policy of inadequate training or discipline. Plaintiff has likewise failed to identify what training Defendant Corizon should have instituted to avoid a constitutional violation. Plaintiff's broad assertion that Defendant Corizon failed to properly train employees is entirely conclusory. The Court concludes that Plaintiff's failure to train claim against Corizon Health is properly dismissed.

Plaintiff also claims that Defendant Corizon failed to maintain proper staffing during the pertinent time period because there was no health professional onsite during third shift on November 22, 2015. Assuming that the failure to have a health professional physically at the prison during the overnight hours was a deficiency resulting from custom or policy, Plaintiff has failed to allege facts showing that the policy amounted to deliberate indifference to the constitutional rights of prisoners such as Plaintiff, or that the policy was the cause of Plaintiff's injury. Plaintiff concedes that he was, in fact, seen and treated by medical professionals on November 22, 2015. Plaintiff was

seen by Defendant Damron earlier in the day on November 22, 2015, during which Defendant Damron wrongly concluded that Plaintiff had a virus. Later in the afternoon, Defendant Damron refused to see Plaintiff, believing that Plaintiff was overstating his symptoms. During third shift, after Defendant Damron left the facility, Defendant Simmons called health services because Plaintiff's condition was deteriorating, and Defendant Kinny came from another facility to examine Plaintiff. Plaintiff was subsequently taken to the hospital. Because the fact that Defendant Kinny had to come from another facility to examine Plaintiff does not appear to have caused his injury, Plaintiff's staffing claim against Defendant Corizon Health is properly dismissed.

Plaintiff claims that numerous named individual Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is

seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff states that when he first became ill on November 19, 2015, he informed staff that he had a preexisting gallbladder condition and was having symptoms. With regard to Unknown Party #2, Plaintiff claims that on November 20, 2015, at approximately 2:30 a.m., he told Unknown Party #2 that he had been ill and asked for cleaning supplies from the locked cleaning closet. Defendant Unknown Party #2 complied and stated that he would try to contact health services for Plaintiff. After Plaintiff cleaned his cell, he walked to the officer's desk and asked Unknown Party #2 what had happened. Unknown Party #2 stated that there was no answer in health services, but that he would try again, and that if he could not reach someone, he would try to find some Pepto for Plaintiff. Plaintiff's allegations against Defendant Unknown Party #2 show that he attempted to help Plaintiff by contacting health services and by obtaining over-the-counter medication on Plaintiff's behalf. Plaintiff asserts that Defendant Unknown Party #2 did not receive adequate training and did not understand the importance of promptly obtaining medical assistance for Plaintiff. These allegations do not support a finding that Defendant Unknown Party #2 was deliberately indifferent

to Plaintiff's medical condition. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Unknown Party #2.

With regard to Defendants Simmons and Vining, Plaintiff claims that Simmons called health services for assistance, but got no response. Defendant Simmons called again at 10:40 p.m., and got a response, but there were still no health professionals in the station. At that point, Defendant Unknown Party #7 directed Defendant Simmons to bring Plaintiff to health services, so Defendants Simmons and Vining complied, but dropped Plaintiff three times during the process. It is clear that Defendants Simmons and Vining attempted to obtain medical assistance for Plaintiff and took him to health services where he could be examined. The fact that they accidentally dropped him while transporting him could constitute negligence, but does not rise to the level of deliberate indifference.

Plaintiff also claims that Defendant Vining joined in with Defendant Kinny's accusations to Plaintiff, that he was drunk and was faking his illness. However, the Court notes that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798,

at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Therefore, the Court concludes that Plaintiff's Eighth Amendment claims against Defendants Simmons and Vining are properly dismissed.

Similarly, Plaintiff's claim against Defendant Unknown Party #8 lacks merit because the fact that Defendant Unknown Party #8 joined in with Defendants Kinny and Vining in verbally harassing Plaintiff does not rise to the level of an Eighth Amendment violation. Plaintiff alleges that Defendants Unknown Parties #9 and #10 allowed Plaintiff to be taken to the hospital in a small squad care without any accompanying medical personnel. However, according to the complaint, Defendants Unknown Parties #9 and #10 are not health professionals. Plaintiff's allegations fail to show that Unknown Parties #9 and #10 knew or should have known that such a mode of transport posed a significant risk to Plaintiff's health or safety. Therefore, the Court concludes that their conduct did not constitute deliberate indifference.

With regard to Defendant Unknown Party #7, Plaintiff alleges that he or she told Defendant Simmons to bring Plaintiff to health care to be examined. The Court notes that such conduct does not support a showing of any wrongdoing on the part of Unknown Party #7. Therefore, Plaintiff's Eighth Amendment claim against Defendant Unknown Party #7 is properly dismissed.

Plaintiff also claims that Defendant Snider was deliberately indifferent to his serious medical needs. Plaintiff alleges that on November 22, 2015, Defendant Snider called health care and arranged for Plaintiff to be seen by Defendant Damron, who gave Plaintiff over the counter medication, but refused to provide any other care because he believed that Plaintiff only had a virus

and would be alright. At 9:00 a.m., Plaintiff told Defendant Snider what Defendant Damron had said, and Defendant Snider replied that there was no one else in health care. Defendant Snider did not take any further action to help Plaintiff. However, the Court notes that Defendant Snider is not a health professional. Defendant Snider had obtained an appointment for Plaintiff with health care, was aware that Defendant Damron thought Plaintiff had a virus, and could not have known that Defendant Damron was wrong in his assessment of Plaintiff's condition. The Court concludes that Defendant Snider's conduct did not constitute deliberate indifference. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Snider.

Plaintiff claims that Defendants Olsen and Baker were deliberately indifferent to his serious medical needs. Plaintiff alleges that on November 22, 2015, Defendants Olsen and Baker called health care for Plaintiff, but Defendant Damron refused to see Plaintiff. Defendant Damron asked Defendants Olsen and Baker to put Plaintiff on the phone and told Plaintiff that he was not going to be given treatment. Plaintiff stated that his condition had worsened and pleaded to be treated, to no avail. Defendant Damron told Plaintiff that he was going home soon, but he would leave a note for the nurse to follow up with Plaintiff. When Plaintiff told Defendants Olsen and Baker, they told him that they were sorry, but there was nothing more that they could do. As with Defendant Snider, Defendants Olsen and Baker are not health professionals. Rather than ignore Plaintiff's complaints, they contacted health care on his behalf and let him speak to Defendant Damron regarding his symptoms. Because they could not have known that Defendant Damron was incorrect in his conclusion that Plaintiff had a virus, Defendants Olsen and Baker did not act with deliberate indifference.

Plaintiff claims that Defendant Unknown Party #6 was deliberately indifferent to Plaintiff's serious medical condition when he refused to respond to Defendant Simmons' call for assistance on November 22, 2015, because no health professionals were in the station. However,

Plaintiff fails to allege any facts indicating that Defendant Unknown Party #6 was actually aware of Plaintiff's serious medical condition and denied help. Rather, it appears that Defendant Unknown Party #6 merely failed to answer the phone, either because he or she was otherwise occupied or was not present when the phone rang. Such conduct does not rise to the level of an Eighth Amendment violation.

Plaintiff claims that Defendant Unknown Party #13 violated his Eighth Amendment rights when Plaintiff was transported to the hospital. Plaintiff states that after Unknown Party #12 pushed Plaintiff to the squad car, Defendant Unknown Party #13 grabbed Plaintiff and put him in the back seat to be transported to the hospital without the assistance of any health care professional. Plaintiff's allegations against Defendant Unknown Party #13 fail to show deliberate indifference for Plaintiff's serious medical needs.

Plaintiff makes conclusory assertions that Defendants Parkinson, Haapala, Damron, Covert, Ball, Jenkins, Bonefeld, and Unknown Party #15 altered his medical records in order to prevent him from pursuing legal remedies. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that the situation complained of caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

In this case, Plaintiff has not been prevented from filing a case asserting his underlying medical claims. Because Plaintiff fails to allege that he suffered any injury to his ability to pursue legal relief as a result of the alleged alteration of his records, his access to courts claims will be dismissed.

Plaintiff claims that Defendants Ander Jack, Anderson, McPherson, and Lamb violated Plaintiff's rights via their handling of Plaintiff's grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Ander Jack, Anderson, McPherson, and Lamb did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

Plaintiff claims that Defendants Papendik and Borgerding began to retaliate against Plaintiff by directing health care personnel to give him less effective medical care. However,

Plaintiff's claims are entirely conclusory. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Therefore, the Court will dismiss Plaintiff's claims against Defendants Papendik and Borgerding.

Plaintiff claims that he was improperly charged a co-pay for some of his medical appointments because they were all related to his gallbladder problems. Plaintiff appears to be asserting that this conduct violated his due process rights. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476,

479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the Court will dismiss Plaintiff's medical co-pay claims.

The Court concludes that the following claims are not clearly frivolous and are not properly dismissed on initial review: Plaintiff's Eighth Amendment claims against Defendants Damron, Covert, Bonefeld, Rogers, McDowell, Kinny, Paquette, and Canlas, his retaliation claims against Defendants Fretag, Covert, Rogers, and McDowell, and his Fourth Amendment claims against Defendants Rogers, McDowell, and Unknown Party #12.

III.     Pending Motions

Plaintiff has filed a motion for preliminary injunction and / or temporary restraining order (ECF No. 4), asserting that property was lost during his retaliatory transfer from URF at the behest of Defendant Fretag. The Sixth Circuit has explained that a court confronted with a request for injunctive relief must consider and balance four factors:

1.    Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.    Whether the movant has shown irreparable injury.

3.    Whether the preliminary injunction could harm third parties.

4.    Whether the public interest would be served by issuing a preliminary injunction.

*Mason Cnty. Med. Ass'n. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  *See also*, *Frisch's Rest Inc. v. Shoney's*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ardister v. Mansour*, 627 F.Supp. 641, 643 (W.D. Mich. 1986).

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2nd Cir. 1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's claim that Defendants have violated his federal rights.  Plaintiff has not alleged that state post-deprivation remedies are inadequate to address the loss of his property.  Moreover, as set forth above, numerous state post-deprivation remedies are available to him.  Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.  Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 4) are properly denied.

Plaintiff has also filed a motion to stay with regard to Defendants' ability to file motions to dismiss and/or for summary judgment prior to the close of discovery (ECF No. 9). Such a motion is properly denied as unnecessary.

Finally, Plaintiff has filed motions to supplement his complaint (ECF Nos. 32 and 34). As noted above, the Court grants the motions to supplement and has considered Plaintiff's supplemental claims in the context of this opinion.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Washington, Sherry, McKee, Rapelje, Woods, Borgerding, Kernstein, Snider, Olsen, Baker, Simmons, Vining, Witty, Bowers, Corizon Health, LaPlaunt, Ball, Jenkins, Ander Jack, Anderson, Mastaw, McLaren, Parkinson, McPherson, Lamb, Groves, Sheldon, Curley, Haapala, Unknown Parties ##1-11 and ##13-16, Recla, Cryderman, Bury, Mackenzie, Goodell, MacMasters, Vollick, Kemp, and Unknown Parties named in supplemental complaints (ECF Nos. 32 and 34) will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will serve the complaint with regard to the following claims: Plaintiff's Eighth Amendment claims against Defendants Damron, Covert, Bonefeld, Rogers, McDowell, Kinny, Paquette, and Canlas, his retaliation claims against Defendants Fretag, Covert, Rogers, and McDowell, and his Fourth Amendment claims against Defendants Rogers, McDowell, and Unknown Party #12.

An Order consistent with this Opinion will be entered.

Dated: August 31, 2017        _____/s/ Gordon J. Quist_____
                                     GORDON J. QUIST
                           UNITED STATES DISTRICT JUDGE